# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| JOSE VICTOR LUNA,<br>            *Plaintiff* | §<br>§<br>§ | |
| **v.** | §<br>§ | |
| CITY OF ROUND ROCK, ROUND<br>ROCK POLICE DEPARTMENT,<br>ALLEN BANKS, WILLIE<br>RICHARDS, JIM STUART,<br>ANDY MCKINNEY, JUSTIN<br>CARMICHAEL, BEN B. JOHNSON,<br>JOHNATHAN A. MINER, SHELBY A.<br>INGLES, NATHAN J. ZOSS,<br>KASHEALA L. MAY, MICHAEL A.<br>CARTER, TRACEY L. COLE, MARC<br>A. MCCALISTER, and VERNON A.<br>ROSSING,<br>            *Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 1:21-CV-00170-RP-SH |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
        UNITED STATES DISTRICT JUDGE

Before the Court are The City of Round Rock's Motion for Summary Judgment, filed April 5, 2022 (Dkt. 19), and The Round Rock Officers' Motion for Summary Judgment, filed April 8, 2022 (Dkt. 20). Plaintiff did not file briefs in response. The District Court referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, Rule 1 of Appendix C to the Local Rules of the United States District Court for the Western District of Texas, and the Court Docket Management Standing Order.

## I.   Background

The following factual summary incorporates allegations set forth in Luna's Incident Reports (Dkts. 6-8), as well as his Complaint. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (instructing that *pro se* complaints are to be liberally construed).

On September 5, 2019,[1] Plaintiff Jose Victor Luna was pulled over by police while driving on Interstate 35 in Round Rock, Texas. Dkt. 8 (Plaintiff's Incident Report) at 1. Defendant Officer Jonathan Miner executed the traffic stop ultimately, with assistance from seven Round Rock Police Officers.[2] *Id.* at 4. The traffic stop was recorded the dashboard cameras on Miner's vehicle (Dkt. 20-5) and the body cameras of Miner, Officer Vernon Rossig, and Sergeant Nathan Zoss (Dkts. 20-6, 20-7, 20-9). The recordings were taken at night, but the area generally is visible in the videos due to the light from the officers' vehicles.

Luna was driving South on Interstate 35 at approximately 10 p.m. when he allegedly observed a marked Round Rock Police Department vehicle to the right of his car. Luna alleges that the vehicle began to "match the speed of [his] vehicle . . . in an attempt to verify the speed of [his] vehicle." Dkt. 8 at 1. The vehicle then maneuvered behind Luna and Miner "activated the radar speed measuring device in his vehicle to get the estimated speed of [Luna's] vehicle in an effort to establish a reason to stop [his] vehicle." *Id.* After "that attempt failed," Luna alleges, Miner conducted a check of his license plate, providing information as to his identity. *Id.* at 1-2. Luna alleges that Miner drove "closely" behind his car – a "duressful police tactic" – but Luna "maintained a safe and prudent speed, while safely and gradually maneuvering his vehicle" into an adjacent lane. *Id.* at 2. After he drove into the Round Rock city limits, Luna alleges, "Officer Miner's patrol vehicle, abruptly and aggressively increase in speed, closing the distance of [their] vehicles, and maneuvered his police vehicle immediately behind [Luna's] vehicle and activate[d] his overhead red and blue police lights." *Id.*

---

[1] The Round Rock Officers' Motion for Summary Judgment incorrectly states that these events occurred on November 26, 2019. Dkt. 20 at 1. The exhibits attached to the brief, including the police report (Dkt. 20-2), state that the events occurred on September 5, 2019, as alleged by Luna.

[2] Luna alleges that Defendants Sergeants Ben Johnson, Shelby Ingles, Nathan Zoss, and Kasheala May and Officers Michael Carter, Tracey Cole, Marc McCalister, and Vernon Rossig also came to the scene.

The dashboard camera video captured the thirty seconds before Miner initiated the traffic stop.[3] The video shows Luna's car veering toward the right-hand lane, driving close to and on top of the lane marker to the right of his vehicle. Dkt. 20-5 (Vehicle Dash Camera Video of Officer Jonathan Miner) at 00:17-00:27. When Miner activated his siren to initiate the traffic stop, Luna immediately pulled onto the highway shoulder and stopped his car. *Id.* at 00:30-00:43. Miner instructed Luna to take the nearest exit and Luna complied by pulling over his car next to Exit 251. *Id.* at 00:45-01:45.

Miner's body camera captures his initial interaction with Luna. Miner can be heard asking Luna for his driver's license and informing him that he was pulled over for failure to maintain his lane, to which Luna responds: "No, that's a lie." Dkt. 20-6 (Body-Worn Camera Video of Officer Jonathan Miner) at 00:01-00:10. Luna then identifies himself as a retired deputy sheriff and says: "I am not here to play these games." *Id.* at 00:10-00:16. Miner again asks Luna to provide his driver's license, to which Luna responds: "No, I did not commit an infraction." *Id.* at 00:15-00:21. Luna repeats this, then tells Miner to call his supervisor. *Id.* at 00:22-00:39. Miner can be heard requesting Luna's driver's license and insurance again. *Id.* at 00:50-1:00. No response can be heard on the video, and Miner requests a supervisor. *Id.* at 1:00-1:28.

Approximately four minutes later, three uniformed officers are seen approaching the driver's side of Luna's car.[4] Dkt. 20-5 (Vehicle Dash Camera Video of Officer Jonathan Miner) at 08:32. Miner can be heard requesting Luna's driver's license and insurance, to which Luna responds: "Am I free to go?" Dkt 20-7 (Body-Worn Camera Video of Officer Vernon Rossig) at 2:05-2:10.

---

[3] In his Affidavit, the Round Rock Police Chief Allen Banks attests that the Round Rock dashboard cameras begin to save recordings when an officer activates the vehicle's overhead lights. The dashboard camera retroactively saves the previous 30 seconds of video. Dkt. 20-3 ¶ 4.

[4] Luna identifies one of the individuals as Johnson. The body camera videos that capture the subsequent interaction allegedly were worn by Zoss, Miner, and Rossig.

Miner states that Luna is not free to go. *Id.* at 2:10. Luna then asks that Miner show him the video of his infraction. *Id.* at 2:25-2:30. Miner responds that Luna "went around all three cars into the fast lane and back over to the right-hand lane." *Id.* at 2:32-35. Luna then says that he used his signal, to which Miner replies: "I never said you didn't." *Id.* at 2:32-2:36. Another officer says that Luna also has an obscured license plate, to which Luna responds: "That's different." *Id.* at 2:42-2:247. Luna says: "There has to be a justifiable stop." *Id.* at 3:00-3:02. Sergeant Zoss instructs Luna to step out of the vehicle. Dkt. 20-9 (Body-Worn Camera Video of Sergeant Nathan Zoss), at 2:47-2:51. When Luna indicates he will not step out of his car, Zoss tells him that he is going to be arrested. *Id.* at 2:51-3:04. Zoss walks away from the car, and on return, tells Luna that he must provide his name, date of birth, and address, and step out of the vehicle or he will be arrested. *Id.* at 4:50-5:08. Luna does not do so, and Zoss informs Luna that he is under arrest. *Id.* at 5:15-5:19.

Zoss reaches inside the driver's side window to unlock the car door and opens the door to Luna's vehicle. Dkt. 20-7 at 5:40-5:48. With the door open, Zoss asks Luna to step out of the car and tells him again that he is under arrest. *Id.* at 5:45-5:55. Luna is sitting in the driver's seat facing forwards. *Id.* Rossig tells Luna to "give me your left arm" and holds on to Luna's wrist as Luna steps out of his car. Dkt. 20-6 at 10:20-10:26. Rossig handcuffs Luna while Zoss has a hand on Luna's shoulder. Dkt. 20-7 at 6:00-6:25.

The video shows Rossig directing Luna from behind to walk towards one of the police cars, then saying: "Stop right here" and adjusting Luna's handcuffs. Dkt. 20-7 at 6:35-6:42. Although difficult to see on the video, Rossig then frisks Luna before placing him into the vehicle. Dkts. 20-5 at 11:24-11:35; 20-7 at 6:50-7:02.

Luna alleges that a "physical search of my person was illegally conducted without my consent and without probable cause . . . . The officer, who conducted the search of my person, removed my brown wallet from my right front pocket, which included my legal, valid driver's license." Dkt. 8 at 5. Luna's brother, who was a passenger in the car, was briefly interviewed by the officers at the scene and released. Dkt. 20-7 at 7:50-14:50.

Luna was taken to the Round Rock Police Department and placed in a temporary holding cells. Dkt. 8 at 5. While in the holding cell, Luna alleges that the handcuffs were "still tightly secured to my wrists, cutting the circulation, causing me to lose sensation in both my fingers, hands and arms." *Id.* He further alleges that he "began to experience severe back spasms, started to feel uncomfortably warm and lightheaded, dizzy and weak with heart palpitations and chest pains." *Id.* After notifying a jail employee, Luna was transported to a hospital, where he underwent "a series of medical procedures" and then was transported by Miner to Williamson County Jail. *Id.* Luna alleges that he was strip-searched and "endured twelve (12) more hours confined within a cramped, overpopulated cell, without my necessary Multiple Sclerosis medication." *Id.* at 6. Luna asserts that his bail "was unlawfully set at $2,500." *Id.*

On February 22, 2021, Luna, who is proceeding *pro se*, filed this lawsuit under 42 U.S.C. § 1983 against the City of Round Rock ("the City"), the Round Rock Police Department, Chief of Police Allen Banks, and thirteen other officers (collectively, the "Individual Defendants"), alleging violations of his First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment rights. Luna seeks compensatory damages of $4.4 million. Dkt. 1. at 7. The City of Round Rock and the Individual Defendants now move for summary judgment.

## II.   Legal Standards

In determining the motions for summary judgment, the Court applies the following legal standards.

### A.  Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55. When a movant seeks summary judgment on a claim for which he has the burden of proof at trial, the movant must "establish beyond peradventure all of the essential elements of the claim or defense." *Guzman v. Allstate Assurance Co.*, 185 F.4th 157, 160 (5th Cir. 2021) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). "Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020).

A qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* Even

when considering a qualified immunity defense, however, the court must view the evidence in the light most favorable to the nonmovant and draw all inferences in the nonmoving party's favor. *Rosado v. Deters*, 5 F.3d 119, 122–23 (5th Cir. 1993). It may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). In the context of a pretrial motion, the applicable standard of review limits the Court's ability to conclusively determine whether an officer is entitled to qualified immunity. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (holding that at summary judgment, a court cannot resolve fact disputes pertaining to either prong of qualified immunity in favor of the moving party).

When video evidence is in the record, and the "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also id.* at 381 (the court should "view[ ] the facts in the light depicted by the videotape"). But when one party's version of events does not "blatantly contradict" the recording, the typical summary judgment standard applies. *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013); *see also Garcia v. City of Buda*, No. 1:17-CV-377-RP, 2018 WL 6682419, at *3 (W.D. Tex. Dec. 19, 2018) (same). "[T]he standard imposed by the Supreme Court [in *Scott*] is a demanding one: a court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account." *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 730 (5th Cir. 2018).

Even where a plaintiff fails to file a timely response to a motion for summary judgment, the movant still must show that there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3

(5th Cir. 1995). If the moving party fails to meet its initial burden, the court must deny the motion for summary judgment. *Reese v. Sun Life Assurance Co. of Canada*, 483 F. Supp. 3d 407, 412 (W.D. Tex. 2020).

### B. Qualified Immunity

Government officials are entitled to qualified immunity unless their conduct violates "clearly established" statutory or constitutional rights "of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). At summary judgment, a qualified immunity analysis requires evaluating (1) whether a reasonable jury could find that an official violated a statutory or constitutional right, and (2) whether the right at issue was "clearly established" so that, at the time, a "reasonable person would have known" they were violating that right. *Tucker v. City of Shreveport*, 998 F.3d 165, 172 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 419 (2021). A court may decide these elements in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Courts should not "define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). For example, the idea "that an unreasonable search or seizure violates the Fourth Amendment is of little help" when determining if conduct violated clearly established law. *Al-Kidd*, 563 U.S. at 742 (citations omitted). "The dispositive question is whether the violative nature of *particular* conduct is clearly established," which "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 577 U.S. at 12 (citations omitted). There need not be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Al-Kidd*, 563 U.S. at 741.

A court evaluating a qualified immunity defense must "consider[ ] only the facts that were knowable to the defendant officers." *White v. Pauly*, 137 S. Ct. 548, 550 (2017) (per curiam). That is because "[a]n official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight." *Brown*, 623 F.3d at 253.

### III.   Summary Judgment Record

The Individual Defendants submitted as summary judgment evidence affidavits of Chief Banks, Officer Miner, and Sergeant Zoss (Dkts. 20-3, 20-4, 20-8), as well as an affidavit of the Round Rock Police Department Custodian of Records (Dkt. 20-1). The Individual Defendants further submitted video footage from the dashboard camera on Miner's vehicle (Dkt. 20-5) and the body cameras of Miner and Rossig as well as Zoss (Dkts. 20-6, 20-7, 20-9).

### IV.   Individual Defendants' Motion for Summary Judgment

The Court addresses in turn Luna's constitutional claims against the Individual Defendants and recommends that the Round Rock Officers' Motion for Summary Judgment should be granted.

#### A.  Fourth Amendment Claims

Luna alleges that his Fourth Amendment rights were violated because (1) his pre-arrest detention was not supported by reasonable suspicion, (2) his arrest was not supported by probable cause, (3) the officers used excessive force during the arrest, and (4) the officers conducted an illegal search of his person.

##### 1.  Pre-arrest Detention

Seizures of motorists suspected of criminal activity are analyzed under the framework set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry*, courts employ a two-part test to evaluate the legality of police investigatory stop: (1) was the officer's action justified at its inception, and (2) were the officer's subsequent actions reasonably related in scope to the circumstances that

justified the stop. *United States v. Henry*, 37 F.4th 173, 176 (5th Cir. 2022) (citing *Terry*, 392 U.S. at 88).

As to the first part of the test, law enforcement officers may briefly detain motorists in public without violating the Fourth Amendment, even without probable cause to arrest the motorist, if the officers have "reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *United States v. Alvarez*, 40 F.4th 339, 350 (5th Cir. 2022) (quoting *United States v. Vickers*, 540 F.3d 356, 361 (5th Cir. 2008)). As defined by the Fifth Circuit in the *Terry* context, "'reasonable suspicion' is an objectively reasonable, particularized, and articulable suspicion that a person has committed or is about to commit a crime." *United States v. Rogers*, 199 F. App'x 311, 315 (5th Cir. 2006) (per curiam) (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)). The standard is an objective one: whether the officers objectively were authorized to act as they did, considering the totality of the circumstances. *Vickers*, 540 F.3d at 363.

As to the second part of the *Terry* test, an officer's subsequent actions must be reasonably related in scope to the circumstances that caused the officer to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless the officer develops reasonable suspicion of additional criminal activity. *United States v. Spears*, 636 F. App'x 893, 901 (5th Cir. 2016). Specifically, a stop justified only by a traffic violation "becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation and attending to related safety concerns, absent reasonable suspicion of additional criminal activity." *Id.* (cleaned up). "If the officer develops reasonable suspicion of additional criminal activity he may further detain the occupants of the vehicle for a reasonable time while appropriately attempting to dispel this reasonable suspicion."

*United States v. Andres*, 703 F.3d 828, 833 (5th Cir. 2013) (quoting *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010)).

In this case, as stated above, the dashboard camera video captured thirty seconds of video before Miner initiated the traffic stop. The video shows Luna's car veering toward the right lane of traffic, but the car does not appear to cross the lane divider. Luna's pleadings describe the events preceding the dashboard camera video as follows:

> I maintained a safe, prudent and legal speed, while driving with due regard. After observing multiple official traffic signs stating, "Slower Traffic Keep Right" and "Left lane for passing only", I instinctively, activated my vehicles right turn signal to indicate my intentions of wanting to move over into the number 2 lane. After seeing no vehicles immediately behind me, or in the immediate vicinity of the number 2 lane, I maintained a safe and prudent speed, while safely and gradually maneuvering my vehicle into the number 2 lane. Again, in observance of the "Slower Traffic Keep Right" and "Left Lane for Passing Only" signs, and with my right turn signal still activated, I maintained the same safe and prudent speed, looking over my right shoulder, and after seeing no other vehicles in the vicinity of the number 3 lane, I safely and gradually maneuvered my vehicle into the number 3 lane with no incident or accident.

Dkt. 8 at 2. Based on his own account, Luna changed lanes multiple times while Miner followed. Luna and Miner dispute whether the movements were done in a safe manner or "these quick and numerous lane changes were potentially unsafe movements." Dkt. 20-4 ¶ 4.

The Court need not determine whether Miner had reasonable suspicion to conduct a traffic stop because he is entitled to qualified immunity. At the time of the stop, it was not clearly established that conducting a traffic stop for repeatedly switching lanes violates the Fourth Amendment.

Miner stated that he initiated the traffic stop based on Luna's failure to maintain his lane. Section 545.060(a) of the Texas Transportation Code provides:

(a) An operator on a roadway divided into two or more clearly marked lanes for traffic:

(1) shall drive as nearly as practical entirely within a single lane; and

(2) may not move from the lane unless that movement can be made safely.

A plurality of the Texas Court of Criminal Appeals has held that § 545.060 creates two separate offenses:

> [I]t is an offense to change marked lanes when it is unsafe to do so; but it is also an independent offense to fail to remain entirely within a marked lane of traffic so long as it remains practical to do so, regardless of whether the deviation from the marked lane is, under the particular circumstances, unsafe.

*Leming v. State*, 493 S.W.3d 552, 559-60 (Tex. Crim. App. 2016) (plurality op.). Some courts have declined to follow the *Leming* plurality and instead held that the state must prove both prongs of the statute. *See, e.g.*, *United States v. Neal*, No. SA-16-CR-491-XR, 2018 WL 9786082, at *2 (W.D. Tex. Aug. 27, 2018), *aff'd*, 777 F. App'x. 776 (5th Cir. 2019) (stating that "the Texas caselaw post-*Leming* is murky," but holding that § 545.060 creates a single offense).

Nonetheless, it was not clearly established at the time of Luna's traffic stop that an officer must have reasonable suspicion that lane changes were unsafe. *See Leming*, 493 S.W.3d at 561 ("It matters not whether that failure [to remain in a traffic lane] was unsafe."). Officer Miner therefore is entitled to qualified immunity for his decision to conduct a traffic stop after seeing Luna make several lane changes, even if the lane changes were made safely. *See al-Kidd*, 563 U.S. at 741 (stating that "existing precedent must have placed the statutory or constitutional question beyond debate").

The Court finds that after Miner initiated the traffic stop, his requests for Luna's license and insurance information were reasonably related to the purpose of the stop. The Court further finds that the stop was not unreasonably prolonged by the Individual Defendants. A reasonable amount of time includes the "time it takes to inspect the driver's license, automobile registration, and

proof of automobile insurance; run computer checks; determine whether there are outstanding warrants against the driver; and ask the purpose and itinerary of the trip." *Spears*, 636 F. App'x at 901. The evidence demonstrates that Luna's traffic stop was prolonged by his refusal to provide his driver's license and his request for a supervisor to come to the scene. These actions further resulted in Miner developing a reasonable suspicion of additional criminal activity, as discussed below. *See Andres*, 703 F.3d at 833 (holding that an officer may further detain the occupants of the vehicle for a reasonable time if the officer develops reasonable suspicion of additional criminal activity). Accordingly, the Court concludes that the Individual Defendants are entitled to qualified immunity as to the traffic stop.[5]

### 2. Probable Cause for Arrest

The Individual Defendants argue that probable cause existed to arrest Luna for violating Texas Transportation Code § 521.025 by refusing to provide the officers his driver's license and Texas Penal Code § 38.15 by interfering with public duties. Section 521.025(b) of the Texas Transportation Code provides:

> (a)    A person required to hold a license under Section 521.021 shall:
>
>     (1) have in the person's possession while operating a motor vehicle the class of driver's license appropriate for the type of vehicle operated; and
>
>     (2) display the license on the demand of a magistrate, court officer, or peace officer.
>
> (b)    A peace officer may stop and detain a person operating a motor vehicle to determine if the person has a driver's license as required by this section.

"[S]tate law requires a driver operating a motor vehicle to surrender his driver's license and proof of insurance when asked by a police officer." *United States v. Zavala*, 541 F.3d 562, 577 (5th Cir. 2008). Traffic violations committed in an officer's presence authorize the officer to commit a custodial arrest. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding

---

[5] Because the Court finds that the Individual Defendants are entitled to qualified immunity for conducting the traffic stop based on Miner's belief that Luna violated § 545.060, the Court need not consider Miner's claim that he also believed that Luna might be intoxicated.

that officer had probable cause to make custodial arrest of driver who was not wearing a seatbelt, as required by TEX. TRANSP. CODE § 545.413).

On the summary judgment record, the Court finds that the officers had probable cause to arrest Luna for failing to provide a driver's license. The undisputed video evidence clearly shows that Luna repeatedly refused to provide his driver's license despite instructions to do so. Because Luna was operating a motor vehicle, he was required to provide the officer's his license under Texas law, and the officers had probable cause to arrest him. *Silver v. Perez*, No. SA-20-MC-0655-JKP, 2020 WL 3790489, at *5 (W.D. Tex. July 7, 2020); *Nicholson v. State*, 594 S.W.3d 480, 487 (Tex. App.—Waco 2019, *pet. ref'd* (Dec. 18, 2019), *pet. granted on other grounds* (Dec. 18, 2019)).[6]

### 3. Excessive Force

Luna alleges that the Individual Defendants used excessive force when removing him from his vehicle and placing him under arrest. Specifically, Luna alleges that the officers removed him from his vehicle by "physically grabbing the wrist of my left arm, twisting it and forcing me to face away from them as they pinned the anterior part of my body up against the vehicle, forcing my arms and hands to the small of my back, and handcuffing my hands behind my back." Dkt. 8 at 5. The Individual Defendants respond that the video evidence is "devoid of any evidence of excessive force" and the officers used "'standard procedure' for taking a suspect into custody." Dkt. 20 at 27-28.

Excessive force claims are analyzed without regard to whether the arrest itself was justified. *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007). To prevail on an excessive force claim, a plaintiff must show "(1) injury, (2) which resulted directly and only from a use of force that was

---

[6] Because the Court finds that the officers had probable cause to arrest Luna for refusing to provide his driver's license, the Court need not address Luna's argument that he did not violate a separate statute, Texas Penal Code § 38.15, because his actions fell within the statute's speech exception.

clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) (quoting *Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009)). The reasonableness of an officer's conduct depends on the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The court must adopt "the perspective of a reasonable officer on the scene, rather than [judge] with the 20/20 vision of hindsight." *Id.*

Luna's excessive force claim appears to be based on the force used to handcuff him. *See* Dkt. 8 at 5. Luna's allegation that he was "pinned" against his vehicle is contradicted by the video evidence. *Id.* The video evidence shows Officer Rossig take Luna by the wrist and lead him out of his vehicle. Dkt. 20-9 at 5:30-6:55. Rossig places Luna into handcuffs while Luna is standing parallel to the vehicle and Sergeant Zoss's hand is on Luna's shoulder. Dkts. 20-7 at 6:00-6:30; 20-9 at 5:30-6:06.

Luna does not allege that any physical injuries directly resulted from this interaction. Luna alleges that he experienced back spasms and chest pain later when he was placed in a cell, but he provides no evidence connecting his injuries to the manner in which he was handcuffed. "[M]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force." *Freeman*, 483 F.3d at 417. *Compare Deville v. Marcantel*, 567 F.3d 156, 168-69 (5th Cir. 2009) (holding that injuries were not *de minimis* where plaintiff provided evidence that "handcuffs were applied so tightly as to cause long-term nerve damage that was severe enough to require four surgeries") *with Tarver v. City of Edna*, 410 F.3d 745, 751-52 (5th Cir. 2005) (holding that "'acute contusions of the wrist'

and psychological injury from being handcuffed" were *de minimis* injuries insufficient to establish excessive force). The Court finds that the Individual Defendants are entitled to summary judgment on Luna's excessive force claim.

### 4. Search of Luna's Person

Luna alleges that an illegal search of his person was conducted at the scene because it was without his consent or probable cause. Luna also alleges that the officers of the Williamson County Jail conducted an illegal search of his person. The Individual Defendants respond that the initial search was incident to a lawful arrest and the second search was allegedly performed by officers of Williamson County and therefore is not cognizable against them.

"[T]he validity of the search of a person incident to a lawful arrest is settled. Individual suspicion is not necessary." *Maryland v. King*, 569 U.S. 435, 436 (2013) (internal citation and quotations marks omitted). The permissible scope of a search incident to lawful arrest includes: "the arrestee's person; any items or containers that were located on the arrestee's person at the time of the arrest; and any items or containers that were located within the arrestee's reaching distance at the time of the arrest." *McCullough v. Wright*, 824 F. App'x. 281, 286 (5th Cir. 2020) (citing *United States v. Curtis*, 635 F.3d 704, 712 (5th Cir. 2011)).

Luna alleges that the "officer, who conducted the search of my person, removed my brown wallet from my right front pocket, which included my legal, valid driver's license." Dkt. 8 at 5. Luna does not allege that the search went beyond this, and it is settled that a search of an arrestee's person, including their wallet, does not violate the Fourth Amendment. *McCullough*, 824 F. App'x. at 286 (holding that search of arrestee's wallet for the purpose of identifying arrestee who refused to identify herself was objectively reasonable); *see also Emesowum v. Cruz*, 756 F. App'x 374, 381 n.3 (5th Cir. 2018) (holding that officers were entitled to qualified

immunity for search of arrestee's wallet, which was located on his person, during the course of a *Terry* stop and frisk).

As to the second search, liability under § 1983 requires an officer to have been "personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner*, 848 F.3d at 695-96; *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980) (stating that "[l]iability may be found only if there is personal involvement of the officer being sued"). Luna does not allege that any of the Individual Defendants were personally involved or that their conduct was causally connected to Williamson County officers performing a search at Williamson County Jail.

**B. Deliberate Indifference**

For his deliberate indifference claim, Luna alleges that he "remained in custody and detained for over, approximately, fifteen (15) excruciating hours, without proper medical attention for physical, emotional and psychological pain." Dkt. 8 at 14. The Individual Defendants respond that Luna's allegations defeat his claim. Specifically, Luna states that, once he complained of medical issues, he was "quickly assessed by ambulance personnel and taken to the hospital to be cleared by qualified medical personnel." *Id.* at 5.

Pretrial detainees have a right under the Due Process Clause of the Fourteenth Amendment not to have their serious medical needs met with deliberate indifference on the part of the confining officials. *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). A serious medical need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). "Deliberate

indifference is an extremely high standard to meet." *Dyer v. Houston*, 964 F.3d 374, 380

(5th Cir. 2020).

> A prison official acts with deliberate indifference only if (A) he
> knows that inmates face a substantial risk of serious bodily harm,
> and (B) he disregards that risk by failing to take reasonable
> measures to abate it. Unsuccessful medical treatment, acts of
> negligence, or medical malpractice do not constitute deliberate
> indifference, nor does a prisoner's disagreement with his medical
> treatment, absent exceptional circumstances. . . . A showing of
> deliberate indifference requires the prisoner to submit evidence
> that prison officials refused to treat him, ignored his complaints,
> intentionally treated him incorrectly, or engaged in any similar
> conduct that would clearly evince a wanton disregard for any
> serious medical needs.

*Gobert*, 463 F.3d at 346 (cleaned up).

Luna admits that, after he requested medical assistance, he "was quickly assessed by

ambulance personnel and taken to the hospital to be cleared by qualified medical personnel."

Dkt. 8 at 5. Luna further admits that he spent "about three (3) hours at the hospital and [received]

a series of medical procedures." *Id.* These facts do not allege "a wanton disregard" for Luna's

medical needs. *See Westfall v. Luna*, 903 F.3d 534, 551 (5th Cir. 2018) (holding that "officers'

half-hour delay in calling for medical assistance [did] not clearly evince a wanton disregard for

[plaintiff's] medical needs").

### C. Remaining Claims

Luna's remaining claims also should be dismissed, as explained below.

#### 1. First Amendment

Luna alleges, without elaboration, the Defendants violated his First Amendment rights

"Pertaining to Freedom of Speech and Expression." To the extent his pleadings allege that the

officers arrested Luna in retaliation for exercising his First Amendment rights, the officers are

entitled to summary judgment because, as explained above, there was probable cause for Luna's

arrest. *See Nieves v. Bartlett*, 204 L. Ed. 2d 1, 139 S. Ct. 1715, 1725 (2019) (holding that plaintiff must plead and prove no probable cause to succeed on retaliatory arrest claim); *see also Buehler v. Dear*, 27 F.4th 969, 992 (5th Cir. 2022) (affirming dismissal of First Amendment retaliatory arrest claim because officers had probable cause to arrest plaintiff exercising First Amendment right in manner that interfering with officers' official duties). Accordingly, the Court finds that Luna's First Amendment claim should be dismissed.

### 2. Second Amendment

Luna alleges that Defendants violated his Second Amendment rights by notifying the Department of Public Safety of Luna's arrest and pending misdemeanor charge, resulting in suspension of his concealed weapon permit for fifteen months. Luna further alleges that seeking to have his Second Amendment rights reinstated has created a financial hardship for him.

Luna has failed to state a cognizable Second Amendment claim. In *Schaefer v. Whitted*, 121 F. Supp. 3d 701, 710 (W.D. Tex. 2015), the court declined to recognize a Second Amendment claim against an individual officer under § 1983. The court reasoned that, while *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), established a private cause of action under the Second Amendment, those decisions "involved challenges to local ordinances effectively placing blanket bans on the possession of certain firearms." *Schaefer*, 121 F. Supp. at 710. The Court held that those decisions did not support the creation of a cause of action against an individual officer where the plaintiff challenged that officer's conduct during an investigation.

Like the plaintiff in *Schaefer*, Luna "does not challenge a city ordinance uniformly depriving him of his [Second Amendment] right," but instead asserts "a novel Second Amendment claim" against individual officers lacking legal support. Even assuming that Luna asserted a cognizable Second Amendment claim, such a claim would be barred by qualified immunity because Luna

cannot show that Miner's conduct violated clearly established law under the Second Amendment. The Court finds that Luna's Second Amendment claim also should be dismissed.

### 3. Sixth Amendment

Luna alleges that his Sixth Amendment rights were violated because he did not receive a speedy trial. Specifically, Luna asserts that "Defendants in this Complaint, made countless, unnecessary postponements and Motions of Continuance which lasted over an agonizing, torturing and painstaking, fifteen (15) arduous months of uncertainty; never knowing that at any moment, the lingering stipulation of the bond agreement being held 'over my head' could be revoked and my liberty could be taken from me." Dkt. 8 at 11.

Luna's Sixth Amendment claim fails because § 1983 does not provide a cause of action for damages for Sixth Amendment violations. The only remedy for a violation of the Sixth Amendment right to a speedy trial is dismissal of the criminal charges. *Betterman v. Montana*, 578 U.S. 437, 444 (2016). Because the charges against Luna have been dismissed, the Court lacks the ability to grant any relief on this claim.

### 4. Seventh Amendment

Luna alleges that Defendants violated his Seventh Amendment rights by "impeding [his] right to have this Complaint decided by a Jury of [his] peers in Civil Court, by intentionally, falsely denying this Complaint is frivolous, and committing perjury." Dkt. 8 at 12. The Seventh Amendment provides the right to a jury trial in certain civil actions. But the Supreme Court has long held that summary judgment does not violate the Seventh Amendment. *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 999 F.3d 970, 972 (5th Cir. 2021) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979)). Luna lacks standing to assert a Seventh Amendment claim against the Individual Defendants because any injury from being denied a jury trial is not "fairly traceable" to them. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).

### 5. Eighth Amendment

Next, Luna alleges that Defendants violated his Eighth Amendment rights relating to "Excessive Bail and Cruel and Unusual Punishment Inflicted" because, based on their "fabricated charges," Luna was "required to post an extremely high cash bail in order to be released from custody." Dkt. 8 at 13. Luna's Eighth Amendment claim fails for the same reasons as his Seventh Amendment claim. Luna does not allege that the Individual Defendants had any involvement in setting his bail; therefore, any injury is not fairly traceable to them. *See Daves v. Dallas Cnty., Tex.*, 22 F.4th 522, 543 (5th Cir. 2022) (holding that plaintiff lacked standing to sue District and County Judges who set bail schedules that were applied by Magistrate Judges for Eighth Amendment violations).

### 6. Malicious Prosecution

Luna also asserts a malicious prosecution claim, alleging that the misdemeanor charge against him is based on the "frivolous, malicious fabricated and unsubstantiated claim by [Defendants]." Dkt. 8 at 11. The Fifth Circuit does not recognize malicious prosecution claims under § 1983. *Morgan v. Chapman*, 969 F.3d 238, 246 (5th Cir. 2020) ("There is a constitutional right to be free of unreasonable searches and seizures. There is no constitutional right to be free from malicious prosecution.").

### 7. Equal Protection

Liberally construing Luna's pleadings, he alleges that the Individual Defendants violated the Equal Protection Clause because Miner knew identifying information about Luna before he initiated the traffic stop. Luna alleges that when Miner checked his license plate he would have seen "[1] Name of registered owner of the vehicle, [2] address of the registered owner, [3] date of birth (DOB) of registered owner, [4] Driver's License number of registered owner, [5] photograph of registered owner, [6] sex, weight and height of registered owner." Dkt 8 at 1-2.

To state an equal protection claim, "a § 1983 plaintiff must either allege that (a) a state actor intentionally discriminated against him because of membership in a protected class, or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Tex. Dep't of Ins.--Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012). Luna does not allege that the Individual Defendants discriminated against him because of his membership in a protected class or that he was treated differently from similarly situated individuals. Accordingly, he has failed to state an equal protection claim.

## V.   City of Round Rock's Motion for Summary Judgment

The Court next considers the City of Round Rock's Motion for Summary Judgment and recommends that it also be granted.

### A.  Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must: "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). It is well-established that a municipality or a local governmental unit is not liable under § 1983 on the theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

To establish municipal liability under § 1983, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the

violation of a constitutional right." *Id.* Here, Luna has neither identified nor provided evidence showing the existence of an official policy attributable to the City. Because Luna has failed to identify a policy or a means of holding the City liable for officers' actions, his § 1983 claims against the City cannot succeed.

### B.  Conspiracy under 18 U.S.C. § 241

Title 18 U.S.C. § 241 does not provide a private right of action. *Gill v. State of Tex.*, 153 F. App'x 261, 262 (5th Cir. 2005) ("Contrary to [plaintiff's] contention, 18 U.S.C. §§ 241 and 242 do not provide a basis for civil liability."). Luna, a private citizen, "has no standing to institute a federal criminal prosecution and no power to enforce a criminal statute." *Id.* Accordingly, Luna's § 241 claim should be dismissed.

### C.  Capacity to be Sued

The capacity of an entity to sue or be sued is determined by the law of the state in which the district court is held. FED. R. CIV. P. 17(b). For home rule municipalities, Texas law "grants all authority to organize a police force to the city itself." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (citing TEX. LOC. GOVT CODE ANN. § 341.003). Round Rock is a home rule municipality. *See* Charter, City of Round Rock, Texas, Art. 1, § 2.02. A Texas home rule city may designate one of its subdivisions as an independent entity with the capacity to sue and be sued, but, absent authorization, suits against the subdivision alone are improper and cannot proceed. *Darby*, 939 F.2d at 313.

Luna has not asserted that such authorization is present here. Accordingly, the Round Rock Police Department should be dismissed from this case. *See id.* (affirming district court dismissal of police department where plaintiff "failed to show that the City of Pasadena ever granted its police department the capacity to engage in separate litigation").

## VI.   Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** The City of Round Rock's Motion for Summary Judgment (Dkt. 19) and The Round Rock Officers' Motion for Summary Judgment (Dkt. 20). The Court **FURTHER RECOMMENDS** that the District Court enter Judgment in favor of Defendants and **DISMISS** this case in its entirety.

## VII.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. See Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 150-53 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The Clerk is directed to mail Plaintiff Jose Victor Luna a copy of this Report and Recommendation by certified mail, return receipt requested.

**SIGNED** on September 26, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE